UNITED STATES of America, Appellee,

v.

Sheri Lee McCRADY, Appellant.

No. 84–5244.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1985.

Decided Oct. 1, 1985.

Cecilia M. Michel, Minneapolis, Minn., for appellant.

Franklin L. Noel, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Sheri Lee McCrady appeals from a final judgment entered in the District Court[1] for the District of Minnesota upon a jury verdict finding her guilty of one count of aiding and abetting the possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (1982). The district court sentenced appellant to two years imprisonment but stayed the execution of the sentence and placed appellant on probation following a six-month jail term. For reversal appellant argues that the district court erred in (1) admitting evidence seized during a warrantless search of the glove compartment of an automobile following the arrest of

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

her fiance, Andrew Paul Schott, Jr., (2) admitting the testimony of an assistant United States attorney, and (3) denying her motion for acquittal. For the reasons discussed below, we affirm the judgment of the district court.

Appellant and Schott had lived together off and on for about five years. On July 26, 1984, appellant and Schott were in a parked car in the Ridgedale Shopping Center in Minnetonka, Minnesota. At about 6:30 p.m. a citizen reported, via the 911 emergency number, that a man was assaulting a woman in a red Mercedes Benz on the east side of the street. The citizen reported that the man hit the woman several times. Within minutes Minnetonka police officers Timothy Mulcrone and Arlan Holland responded separately to the dispatch. Mulcrone asked Schott for identification and then observed that appellant was crying and had bruises on her face and a cut on the bridge of her nose. At that point Mulcrone and Holland arrested Schott for domestic abuse under the provisions of the Minnesota Domestic Abuse Act, Minn. Stat. § 629.341 (1981).

As Holland performed a patdown search of Schott, he discovered a small vial of white powder in Schott's trouser pocket. It was later determined that the vial contained one gram of cocaine. Schott was at that point advised that he was also under arrest for possession of cocaine and was placed in the police car.

Holland then asked Schott if he wanted appellant to take possession of his automobile. Holland testified that before surrendering the vehicle to appellant, he decided to search the vehicle for evidence of either the assault or possession of cocaine. As Holland began his search, he noticed that the glove compartment, which had been unlocked when Schott removed his vehicle registration papers from it, was locked. The glove compartment was the type which did not automatically lock upon closing but had to be locked with a key. Holland took the keys from the ignition and asked appellant to unlock the glove compartment and she did. The government concedes that Holland did not seek Schott's or appellant's consent to search the glove compartment.

Inside the glove compartment Holland observed a brown expanding business folder which had a white addressed envelope taped to its front. In response to a question, appellant indicated that the envelope contained business papers belonging to Schott. Holland testified that the hard irregularly shaped contents were inconsistent with appellant's description. Consequently, he opened the envelope and found a tube of white powder wrapped in 23 sheets of yellow ruled legal paper and a package of white powder wrapped in foil and inserted in a cassette case. The powder was later determined to be cocaine cut with mannitol. At that point Holland placed appellant under arrest for possession of cocaine.

The officers subsequently secured a warrant and searched the apartment occupied by appellant and Schott. They found one pound of cocaine inside a locked briefcase underneath a double air mattress, the only bed in the apartment. Next to the pound of cocaine was a bag which contained a smaller quantity of cocaine cut with mannitol. A gram scale containing traces of cocaine and mannitol was found on the floor between the bed and the bedroom door. In close proximity to the gram scale on the floor were two address books belonging to appellant. In the bedroom closet were two heat sealers and sealer bags, which are often used by narcotics dealers for packaging their products. Additional narcotics-related paraphernalia were found in the living-dining area, including two straining kits, a triple beam scale, smaller gram scales, a quantity of small vials, cut drinking straws, and roach clips (marijuana cigarette holders). In a sheaf of bills, receipts and used airlines tickets, the officers found a bound notepad with 12 pages entitled "The Latest Flash." Appellant's fingerprints were found on two of the sheets which discussed cocaine use. Appellant had written the 12 pages and contained therein were admissions that appellant had sold cocaine earlier that year to a friend,

that she had lied to Schott about using some cocaine and that she had surreptitiously taken some high purity cocaine from bags and replaced it with a lower grade.

Appellant and Schott were indicted for possession of cocaine with the intent to distribute. Schott pleaded guilty prior to trial. Following a jury trial, appellant was found guilty of the charge. This appeal only involves appellant.

Appellant initially argues that the warrantless search of the glove compartment following Schott's arrest and prior to her arrest was invalid because it did not come within the limited exceptions to the fourth amendment warrant requirement. Appellant further argues that Officer Holland did not request or secure consent for the search of the car which was in her control and custody at the time of the search. Appellant argues that the government's reliance on *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (*Belton*), is misplaced. *Belton* is inapplicable to this case because appellant was not under arrest at the time of the search and Schott had already been arrested and transported from the scene earlier. Lastly, appellant argues that the search of the apartment pursuant to the search warrant was also invalid because it was the fruit of the illegal search of the car.

The government argues that the search of the glove compartment and the envelope within it falls squarely within the *Belton* "bright line" rule. The government argues that the Supreme Court held in *Belton* that a search of an automobile is valid even though the arrestee is in custody.

The district court found that Officer Holland searched the car after arresting Schott for possession of drugs and prior to surrendering the automobile to appellant. The district court also held that although Schott had been removed from the scene, the search was incidental to and contemporaneous with his arrest.

In *Belton* the police officer had "directed the men to get out of the car, and placed them under arrest ... patted down each of the men and split them up into separate areas of the Thruway ... so they would not be in physical touching area of each other." *Id.* at 456, 101 S.Ct. at 2862. The officer then picked up an envelope marked "super gold" and found that it contained marijuana. The officer then searched the passenger compartment of the car and found a black leather jacket on the back seat. He unzipped one of the pockets of the jacket and discovered cocaine. The Supreme Court reversed the New York Court of Appeals which had held that "the warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might gain access to the article." *People v. Belton,* 50 N.Y.2d 447, 429 N.Y.S.2d 574, 575, 407 N.E.2d 420, 421 (1980). The Supreme Court held that when a "[police officer] has made a lawful custodial arrest of the occupant of an automobile he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.... [T]he police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee so also will containers in it be within his reach." 453 U.S. at 460, 101 S.Ct. at 2864. The Court further noted that

"container" here denotes any object capable of holding another object. It thus includes *closed or open glove compartments,* consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk.

*Id.* at 460 n. 4, 101 S.Ct. at 2864 n. 4 (emphasis added).

In the present case the police conducted a search of the passenger compartment, including the glove compartment and an envelope found in the glove compartment immediately after Schott was arrest-

ed. This search is similar to the search in *Belton* and comes within the "bright line" rule of *Belton.* *United States v. Cotton,* 751 F.2d 1146, 1148 (10th Cir.1985); *United States v. Collins,* 668 F.2d 819, 821 (5th Cir.1982). We hold that the district court correctly determined that the search of the car including the locked glove compartment was incident to an arrest. We further hold that the search of the apartment pursuant to a search warrant was not tainted by a prior illegal search and was therefore valid.

Appellant next argues that the district court erred in admitting the testimony of assistant United States attorney Jon Hopman. Before trial Hopman sat in on an interview of Mary Regnier, the manager of the apartment where appellant and Schott lived. Hopman was not otherwise involved in the prosecution of this case. At trial Regnier was called by the government and asked if appellant told her that the prosecution was a frame-up and that the drugs had been planted in the apartment. The government was surprised by Regnier's answer. Regnier initially indicated that she could not remember if appellant had made that statement to her or whether she had read it in the newspaper. When confronted with her pretrial statement concerning the conversation with appellant, Regnier admitted that appellant had made such a statement to her.

Appellant was also asked on cross-examination whether she had made such a statement to Regnier. Appellant denied making the statement. Because Hopman would be out of town for the rest of the trial and therefore unavailable as a rebuttal witness, the district court permitted the government to interrupt appellant's cross-examination and permitted Hopman to testify out of order. Hopman testified that Regnier unequivocally stated during the pretrial interview that appellant had said that the prosecution was a frame-up and the drugs had been planted in the apartment.

Appellant first argues that the district court erred in admitting into evidence Hopman's testimony because the Code of Professional Responsibility prohibits lawyers who represent litigants from testifying. Appellant argues that Hopman "apparently" participated in the preparation of the government's case. Appellant also argues that the testimony of an assistant United States attorney was prejudicial because of the prestige of the legal profession and of this office.

The government argues that Hopman was not responsible for the preparation of this case, did not engage in the trial of the case, and therefore was not barred from testifying by the Code of Professional Responsibility. The government further argues that Hopman was asked to sit in on the pretrial interview of Regnier to obviate the possibility that the prosecutor would have to testify to impeach Regnier.

■ Appellant's arguments are without merit. Appellant's reliance on *United States v. Torres,* 503 F.2d 1120, 1125–26 (2d Cir.1974) *(Torres),* is misplaced. In *Torres* the assistant United States attorney who testified as a witness had been sitting at the government's counsel's table during the trial and there was no showing that other persons could not testify concerning the witness's pretrial conversation. *Id.* In the present case, Hopman did not prepare or try the case. In addition, Hopman was not barred from testifying because he was an assistant United States attorney. "[T]he mere fact that a witness holds an office of public trust should [not] disqualify him as a witness...." *United States v. Cerone,* 452 F.2d 274, 288 (7th Cir.) (United States attorney testified), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972); *United States v. Callanan,* 450 F.2d 145, 150 (4th Cir.1971) ("[T]he government should not be deprived of ... evidence because of the prominence of its witnesses.").

■ Appellant next argues that Hopman's testimony was hearsay and therefore inadmissible. We disagree. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. § 801(c); *see Curreri v. International*

*Brotherhood of Teamsters,* 722 F.2d 6, 11 (1st Cir.1983); *United States v. Stout,* 599 F.2d 866, 869 (8th Cir.), *cert. denied,* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979). Hopman's testimony is not hearsay because it was not offered to prove the truth of the matter asserted. The government presented Hopman's testimony to impeach Regnier. The government did not seek to prove that the prosecution was a frame-up or that the drugs had been planted, but rather that Regnier's answer was inconsistent with her earlier statement. *See Crimm v. Missouri Pacific R.R.,* 750 F. 703, 709 (8th Cir.1984).

Appellant next argues that Hopman's testimony was inadmissible because Regnier's out-of-court statement was consistent with her in-court testimony. Alternately, appellant argues that Hopman's testimony was inadmissible because it was extrinsic evidence offered to impeach the credibility of a witness on a collateral issue. The government argues that the statement was a false exculpatory statement of appellant and was admissible as an admission of a party opponent under Rule 801(d)(2)(A). The government argues that Regnier's statements were inconsistent and that appellant's explanation of her arrest as a frame-up is not collateral to the issues in the case, but rather is a post-arrest explanation of the charge by appellant to a disinterested third party.

■ We believe that Rule 801(d)(2)(A) is inapplicable to Hopman's testimony. Rule 801(d)(2)(A) applies to admissions by party opponents and includes a party's "own statement, in either his individual or a representative capacity." The testimony which is at issue in this case is not the statement of appellant as reported by Regnier, but rather Regnier's pretrial statement as reported by Hopman. Regnier is not a party opponent in this case and therefore Rule 801(d)(2)(A) does not apply so as to make admissible Hopman's testimony concerning Regnier's pretrial statement. *See United States v. Piatt,* 679 F.2d 1228, 1232 (8th Cir.1982).

■ Fed.R.Evid. 613(a) does, however, apply to the present situation. This rule, which provides that extrinsic evidence of a prior inconsistent statement of a witness may be admitted, has at least two important limitations. First, the witness' out-of-court statement must be inconsistent with the witness' in-court testimony. "[I]nconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." *United States v. Dennis,* 625 F.2d 782, 795 (8th Cir.1980); *see United States v. Rogers,* 549 F.2d 490, 495–96 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977). The trial judge has considerable discretion in determining whether trial testimony is inconsistent with prior statements. *United States v. Dennis,* 625 F.2d at 795.

A second important limitation on the use of extrinsic evidence of prior inconsistent statements is that the statements not concern collateral matters. Contradiction may be shown only on matters material to the substantive issues of the trial. *United States v. Matlock,* 675 F.2d 981, 987 (8th Cir.1982). "A matter is collateral if the fact could not be shown in evidence for any purpose independent of the contradiction." *United States v. Harris,* 542 F.2d 1283, 1306 (7th Cir.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977).

■ When Hopman's testimony is examined in light of the above principles, we conclude that the district court abused its discretion in admitting Hopman's testimony about Regnier's prior out-of-court statement because her in-court testimony was consistent with this out-of-court statement. Although Regnier initially denied that appellant had made the statement, she did admit, following further questioning by the government, that appellant made such a statement. The prosecutor's questioning of Regnier was as follows:

[Prosecutor]: Would it refresh your memory at all if I indicated to you that you said Sheri McCrady had described the pound of cocaine as having been

planted by the police and the case having been a frame-up?

[Regnier]: That's true.

[Prosecutor]: Did she say that to you?

[Regnier]: Not those exact words, but yes.

Trial Transcript at 182. Regnier both admitted to having made the pretrial statement and admitted that appellant had made the statement to her. There was no inconsistency between her testimony and the pretrial out-of-court statement. The pretrial statement therefore was not admissible as a prior inconsistent statement. *See United States v. Rogers*, 549 F.2d at 496. Nor is it admissible as a prior consistent statement. *Johnson v. United States*, 347 F.2d 803 (D.C.Cir.1965) (prior consistent statements may not be used to support a party's unimpeached witness).

■■■ We hold, however, that the district court's error in admitting Hopman's testimony was harmless. An error is harmless if the reviewing court, after viewing the entire record, determines that no substantial rights of the defendant were affected, *United States v. Ong*, 541 F.2d 331–38 (2d Cir.1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977), and that the error did not influence or had only a very slight influence on the verdict. *See, e.g., United States v. Brown*, 692 F.2d 345, 351 (5th Cir.1982). In the present case Hopman's testimony was merely cumulative because, as determined above, Regnier had already testified that appellant had stated that the prosecution was a frame-up and that the drugs had been planted. *See United States v. Nasse*, 432 F.2d 1293, 1303 (7th Cir.1970), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1657, 29 L.Ed.2d 148 (1971); *Lake v. United States*, 302 F.2d 452, 456–57 (8th Cir.1962). Moreover, the evidence of appellant's guilt was substantial. *See, e.g., United States v. Smith*, 465 F.2d 388, 391–92 (8th Cir.1972).

Appellant next argues that the district court erred in denying her motion for acquittal on the basis of insufficient evidence that she aided and abetted Schott in the possession of cocaine with intent to distrib-

ute. Appellant argues that the government failed to show that she had either actual possession or constructive possession of the cocaine.

On appellate review of a claim of insufficiency of the evidence, this court considers the evidence in the light most favorable to the verdict and accepts all reasonable inferences as established. *Klein v. United States*, 728 F.2d 1074, 1075 (8th Cir.1984), (per curiam). "A motion for acquittal should be granted only where 'the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged.'" *United States v. Anziano*, 606 F.2d 242, 244 (8th Cir.1979) (emphasis in original) (citation omitted).

■■■ Appellant was charged with aiding and abetting the possession of one pound of cocaine with intent to distribute. "'To establish aiding and abetting the government is required to show that the defendant associated [herself] with the unlawful venture, that [she] participated in it as something [she] wished to bring about, and that [she] sought by [her] action to make it succeed.'" *United States v. DeLuna*, 763 F.2d 897, 925 (8th Cir.1985), *citing United States v. Anziano*, 606 F.2d at 244. "[S]ome affirmative participation [by the defendant] which at least encourages the perpetrator [must be shown]." *United States v. Anziano*, 606 F.2d at 245. Circumstantial evidence is "intrinsically as probative as direct evidence" and may be the sole support for a conviction. *United States v. Two Eagle*, 633 F.2d 93, 97 (8th Cir.1980).

■■■ We hold that the government presented evidence from which a jury could reasonably infer that appellant aided and abetted Schott in the possession of cocaine with intent to distribute. Regnier, the manager of appellant's apartment, testified that appellant lived at the apartment with Schott and was seen on the premises daily. The briefcase containing the pound of co-

caine was found under their double air mattress. Also in the apartment were a scale for the weighing of the cocaine, strainer kits and heat sealers which were used in the handling and packaging of cocaine. Appellant also admitted that she knew that Schott had cocaine in the apartment on a prior occasion and that she had sold cocaine on one occasion. The district court did not err in denying appellant's motion for judgment of acquittal.

Accordingly, the judgment of the district court is affirmed.